BLAB T.V. OF MOBILE, INC. d.b.a. Bay T.V., Plaintiff-Appellant,

v.

COMCAST CABLE COMMUNICATIONS, INC., Comcast Cablevision Corporation of Mobile, Inc., Defendants-Appellees.

No. 97-6804.

United States Court of Appeals,

Eleventh Circuit.

July 30, 1999.

Appeal from the United States District Court for the Southern District of Alabama. (No. 96-0286-RV-S), Richard W. Vollmer, Jr., Judge.

Before HATCHETT and BIRCH, Circuit Judges, and KEITH[*], Senior Circuit Judge.[**]

BIRCH, Circuit Judge:

In this appeal, we determine, as a matter of first impression, whether section 612 of the Cable Communications Policy Act of 1984 completely preempts state-law tort and breach of contract claims involving "leased access" cable channels such that the claims are removable to federal court. The district court ruled that section 612 converted the state-law claims into claims arising under federal question jurisdiction, and thus denied a motion to remand the claims to state court. For the reasons set forth in this opinion, we conclude that Congress has not manifested sufficient intent to displace completely state-law claims pursuant to section 612. The district court therefore erred in determining that it possessed jurisdiction over this case on complete preemption grounds.

*I. Background*

On August 1, 1987, BLAB-TV of Mobile ("Bay TV") became Mobile, Alabama's first and only locally owned and operated television station. At that time, Comcast Cable Communications, Inc.

---

[*]Honorable Damon J. Keith, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

[**]This decision is rendered by a quorum, due to the retirement of then-Chief Judge Hatchett on May 14, 1999. 28 U.S.C. § 46(d).

("Comcast"), was the cable operator for Mobile as defined under the Cable Communications Policy Act of 1984, *codified at* 47 U.S.C. § 521 *et seq.* ("Cable Act"). Bay TV leased commercial air time from Comcast in which Bay TV broadcasted its programs over the cable service. Initially, Bay TV and Comcast executed a four-year contract that was to expire on July 31, 1991. The parties later disagreed about the terms of a new contract. Bay TV claims that the parties had entered into a verbal agreement to honor the terms of the original contract until the new contract was finalized and that the parties in fact entered into a new contract, while Comcast claims that the parties never executed the second contract.

In September 1993, Bay TV filed a complaint in the Circuit Court of Mobile County, Alabama, asserting claims of fraud and breach of contract.[1] Bay TV included a demand for a jury trial and demands for both compensatory and punitive damages.

In March 1996, Comcast removed the case to federal district court, asserting that section 612 of the Cable Act, *codified at* 47 U.S.C. § 532, extended federal jurisdiction over Bay TV's claims even though they were based on state law. Section 612 regulates the manner in which cable operators like Comcast make "leased access" cable channels available to unaffiliated local broadcasters like Bay TV, requiring a cable operator with thirty-six or more channels to set aside ten percent of its capacity for use by unaffiliated programmers. Cable Act § 612(b)(1)(A), 47 U.S.C. § 532(b)(1)(A). Section 612 also creates a federal cause of action in district courts for unaffiliated programmers who are aggrieved by the failure or refusal of cable operators to make the commercial leased access channels available, authorizing the courts to award injunctive relief as well as actual damages if appropriate. *Id.* § 612(d), 47 U.S.C. § 532(d). The provision states:

> Any person aggrieved by the failure or refusal of a cable operator to make channel capacity available for use pursuant to this section may bring an action in the district court of the United States for the judicial district in which the cable system is located to compel that such capacity be made available. If the court finds that the channel capacity sought by such person has not been made available in accordance with this section, or finds that the price, terms, or conditions established by the cable operator are unreasonable, the court may [award certain injunctive relief and actual damages, if appropriate].

*Id.*

---

[1]Bay TV included numerous other state law causes of action, but dropped these claims after the case was removed to federal court.

Bay TV did not object to the removal of its state-law claims to federal court. One year later, Comcast filed a motion to strike Bay TV's demand for a jury trial and demand for punitive damages, arguing that neither is permitted for claims under section 612. In response, Bay TV filed a motion to remand, arguing that its claims arose under state law and thus did not confer removal jurisdiction. After hearing argument, the district court agreed with Comcast and held that section 612 fell within the "complete preemption" doctrine and therefore converted Bay TV's state-law claims into claims arising under section 612. The court denied Bay TV's motion to remand and granted Comcast's motion to strike Bay TV's demands for a jury trial and for punitive damages.

Upon a motion for reconsideration, the district court certified for interlocutory appeal the question whether section 612 completely preempts Bay TV's state-law claims and confers removal jurisdiction upon the district court. We agreed to resolve this question.

## II. Discussion

The issue raised in this appeal is whether the district court possessed jurisdiction to consider the case on the merits. Whether a federal court possesses jurisdiction is a question of law that we review *de novo, see Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998), and an argument that the court lacks jurisdiction may be raised at any time during the course of the proceedings. *See Lucero v. Trosch,* 121 F.3d 591, 598 (11th Cir.1997).

The district court asserted jurisdiction over this case pursuant to the removal statute codified at 28 U.S.C. § 1441(a). The removal statute provides that any civil action brought in state court may be removed to federal court by the defendant so long as the federal court has original jurisdiction over the case under either federal question or diversity jurisdiction. § 1441(a). The parties agree that no diversity jurisdiction exists in this case, and therefore the case was removable only if the suit raises a federal question, that is, if the suit is an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

When evaluating whether this case arises under federal law, we are guided by the "well-pleaded complaint" rule, which provides that the plaintiff's properly pleaded complaint governs the jurisdictional

determination. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). A case thus may be removed based on federal question jurisdiction "only when the plaintiff's statement of his own cause of action shows that it is based" on federal law. *Id.* The presence of a federal defense does not make the case removable, even if the defense is preemption and even if the validity of the preemption defense is the only issue to be resolved in the case. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). In short, the plaintiff is the "master of the claim" and may prevent removal by choosing not to plead an available federal claim. *Id.* at 392, 107 S.Ct. at 2429.

Defendant argues that this case falls within an "independent corollary" to the well-pleaded complaint rule known as the "complete preemption" doctrine. *See id.* at 393, 107 S.Ct. at 2430. According to the Supreme Court, complete preemption occurs when "the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (internal quotation marks and citation omitted). "Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to 'federal question' jurisdiction and thus may provide a basis for removal." *McClelland v. Gronwaldt,* 155 F.3d 507, 512 (5th Cir.1998); *see also* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition,* 76 Tex. L.Rev. 1781, 1794 (June 1998) (hereinafter "Miller") ("The stated rationale for this deviation from what is one of the fundamental cornerstones of federal subject matter jurisdiction is that, in these cases, federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action.") (internal quotation marks omitted).

The inclusion of the term "preemption" within the doctrine's label, while not inaccurate, has enkindled a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption. Stated simply, complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court. As summarized by the Fifth Circuit,

> "complete preemption" is less a principle of substantive preemption than it is a rule of federal jurisdiction. In other words, complete preemption principally determines not whether state or federal

law governs a particular claim, but rather whether that claim will, irrespective of how it is characterized by the complainant, [serve as the basis for federal question jurisdiction].

*McClelland,* 155 F.3d at 516-17.

The Supreme Court published the opinion credited with originating the complete preemption doctrine more than 30 years ago. *See Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). In *Avco,* the Court held with little elaboration that a state court lawsuit to enjoin a defendant union from striking actually arose under section 301 of the Labor Management Relations Act ("LMRA"), *codified at* 29 U.S.C. § 185, which grants federal jurisdiction for suits alleging violations of collective bargaining agreements. 390 U.S. at 560, 88 S.Ct. at 1237. The Court therefore concluded that the case was removable to federal court. *Id.*

Since publishing *Avco,* the Court has revisited the complete preemption doctrine only sparingly and in the context of only one federal statute besides the LMRA.[2] *See Schmeling v. NORDAM,* 97 F.3d 1336, 1339-41 (10th Cir.1996) (summarizing cases). The Court relied on *Avco* to conclude that state claims falling within the scope of section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), are necessarily federal in character and therefore removable to federal court. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23-24, 103 S.Ct. 2841, 2853-54, 77 L.Ed.2d 420 (1983); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546-47, 95 L.Ed.2d 55 (1987). The *Metropolitan Life* Court extended the doctrine to section 502 claims "reluctant[ly]," *see* 481 U.S. at 65, 107 S.Ct. at 1547, and employed an analytical framework based almost entirely on the similarities between the LMRA and ERISA. First, the Court noted that the language in section 502 of ERISA that grants jurisdiction to federal courts is virtually identical to the language contained in section 301 of the LMRA. *See*

---

[2]Some courts have read *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), as a case applying the complete preemption doctrine. In *Oneida,* the Court held that a district court possessed federal question jurisdiction over a right-to-possession claim concerning Indian tribal lands because the claim asserted a right to possession under federal law. 414 U.S. at 675, 94 S.Ct. at 781. Ostensibly, the reasoning of *Oneida* suggests that a state law claim falling within the scope of federal laws governing possession of Indian tribal lands is removable to federal court. Because we find sufficient guidance in the Supreme Court opinions that expressly consider the complete preemption doctrine in the context of ERISA, we need not consider *Oneida.*

*id.* at 65, 107 S.Ct. at 1547.  Second, the Court observed that the legislative history surrounding the enactment of ERISA expressly stated that suits under section 502 "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]." *Id.* at 65-66, 107 S.Ct. at 1547-48 (emphasis omitted) (quoting H.R. Conf. Rep. No. 93-1280, at 327 (1974), U.S. Code Cong. & Admin. News at 5038, 5107).  These two factors, the Court concluded, revealed "the clearly manifested intent of Congress" that such claims are necessarily federal in character and therefore removable.  *Id.* at 67, 107 S.Ct. at 1548.

Two months after the publication of *Metropolitan Life,* the Court released *Caterpillar.*  In *Caterpillar,* the Court concluded that, because the state claims at issue challenged the validity of individual employment contracts rather than a collective bargaining agreement, the claims did not fall within the scope of section 301 of the LMRA and were not removable under the complete preemption doctrine.  482 U.S. at 394-95, 107 S.Ct. at 2431.  The Court did not have occasion to consider whether any federal statutes other than the LMRA or ERISA provide the opportunity to remove state claims to federal court, and left undisturbed the scope of the complete preemption doctrine as it was defined, albeit imprecisely, in *Metropolitan Life. See Schmeling,* 97 F.3d at 1341-42 (reviewing *dicta* in *Caterpillar* and concluding that "[t]he *Caterpillar* Court purported merely to apply the complete preemption doctrine, not to amend it").

These cases reveal that, although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA.  A narrow reading of *Metropolitan Life* suggests that complete preemption occurs only when a federal cause of action features jurisdictional language that closely parallels that of section 301 of the LMRA as well as an express statement within the legislative history that Congress intends for all related claims to arise under federal law in the same manner as section 301.  Courts, however, have not uniformly interpreted *Metropolitan Life* in this fashion and have struggled to define the exact contours of the complete preemption doctrine.  The results have varied.  As the Tenth Circuit noted, "the scope of the doctrine is not entirely clear:  '[t]he evolution of the doctrine ... has been one of fits-and-starts

and zig-zags [and] has, not surprisingly, occasioned both confusion and disagreement among the federal circuit and district courts.' " *Schmeling,* 97 F.3d at 1339 (quoting *Burke v. Northwest Airlines, Inc.,* 819 F.Supp. 1352, 1356 (E.D.Mich.1993)).  In an extensive examination of the instances in which courts have deviated from the well-pleaded complaint rule, Professor Miller has concluded that:

> [t]he application of the complete-preemption doctrine is unclear ... because thus far the [Supreme] Court has not enunciated clear principles for identifying completely preempted claims beyond the LMRA and ERISA contexts nor defined the "necessary quantum of congressional intent." Furthermore, Congress has never indicated its desire to invoke the complete-preemption principle and replace certain state law causes of action with federal law through the explicit adoption of this term in a federal statute.

Miller, at 1796.

The Eleventh Circuit has not addressed directly the application of the complete preemption doctrine outside of the context of the LMRA or ERISA, so we will look to those circuits that have done so for guidance.  These courts have adopted several different two-and three-part tests for assessing complete preemption arguments.  The Fourth Circuit examines whether:  (1) the rights underlying the state cause of action are equivalent to the exclusive rights granted under a federal statute;  and (2) the statutory language and legislative history evinces Congress's intent that litigation to protect the federal rights occur in federal courts. *See Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225, 229-33 (4th Cir.1993) (concluding that removal jurisdiction existed pursuant to the complete preemption doctrine for a state-law "copying by use of computer" claim that fell within the scope of section 301 of the Copyright Act).  The Tenth Circuit has adopted a similar test, examining whether:  (1) Congress has provided a federal cause of action to enforce the federal law, thus revealing an intent to allow removal in such cases, and (2) the state claim is displaced by federal law under an ordinary preemption analysis. *See Schmeling,* 97 F.3d at 1343 (concluding that no removal jurisdiction existed for state claim concerning employee drug testing because Federal Aviation Act regulations did not provide a federal cause of action).  The Fifth Circuit has applied a three-part test, requiring:  (1) the existence of a federal cause of action within the federal statute, (2) a provision conferring jurisdiction to the federal courts for the cause of action that "closely parallels" the jurisdictional provisions of the LMRA and ERISA, and (3) evidence of "the kind of congressional intent found to exist with respect

to ERISA." *Aaron v. National Union Fire Ins. Co. of Pittsburg,* 876 F.2d 1157, 1164-65 (5th Cir.1989) (concluding that no removal jurisdiction existed for state wrongful death suit because the Longshore and Harbor Workers' Compensation Act did not contain a jurisdictional provision closely parallel to that contained in the LMRA and no evidence existed that Congress intended to allow removal).

These cases reveal a varying emphasis on such questions as whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions. Despite the variations, however, "all [the tests] focus on a similar goal: to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]." Miller, at 1797-98. The complete preemption analysis thus focuses primarily upon evaluating Congress's intent, which is the "touchstone" of federal court removal jurisdiction. *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1548.

We are able to solve the jurisdictional puzzle presented by this case by looking solely at the expressions of congressional intent found in section 612, the Cable Act in general, and the Act's legislative history. Not surprisingly, Congress did not address this issue directly; the Cable Act and its legislative history contain no statements that expressly announce an intent that state-law actions related to section 612 are to be considered as arising under federal law for purposes of removal jurisdiction. Instead, section 612(a) contains jurisdictional language that is similar to section 301 of the LMRA, which according to *Metropolitan Life* supports complete preemption.

Even so, Congress omitted any indication in the Cable Act's legislative history that section 612(a)'s jurisdictional language is intended to function in the same manner as section 301 of the LMRA, a circumstance that was of significant importance to the *Metropolitan Life* Court. *See* 481 U.S. at 65, 107 S.Ct. at 1547. We find the absence of such a statement in the legislative history to be a persuasive argument against

finding complete preemption in this case, but we agree with other circuit courts that this omission is not dispositive. Instead, we will examine the surrounding provisions in the Cable Act and its legislative history to seek out other clues of Congress's intent.

Compared to the LMRA and ERISA, the Cable Act reveals a broad policy of preserving state authority except in areas in which the exercise of this authority would be inconsistent with federal law. Listed among the purposes of the Cable Act is an effort to "establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems." Cable Act § 601(3), 47 U.S.C. § 521(3). In addition, in a section entitled, "Coordination of Federal, State, and Local Authority," the Cable Act provides that "[n]othing in this subchapter shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter." *Id.* § 636(b), 47 U.S.C. § 556(b). These provisions contemplate the application of state law and the exercise of state court jurisdiction to some degree with respect to the regulation of cable services. In our view, the inclusion of these provisions counsels against a conclusion that the purpose behind the Cable Act was to replicate the "unique preemptive force" of the LMRA and ERISA. *Cf. Metropolitan Life,* 481 U.S. at 65, 107 S.Ct. at 1547.

Comcast argues that, although Congress inserted these broad policy statements within the Cable Act, section 612 in particular embodies an intent to displace state laws related to commercial leased access channels so forcefully that we should examine this provision independently of the Act's other provisions. We acknowledge that the availability of leased cable channels to parties unaffiliated with cable operators was a topic of significant interest to Congress, as reflected by the creation of a federal cause of action and a stated desire to encourage the development of "Federal case law precedent" in this area. *See* H.R.Rep. No. 98-934, at 52 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4689.

These circumstances, however, are common features found in many sections of the U.S.Code. For example, Congress used language that closely parallels the language of section 612 to create a cause of action on behalf of employees of an insured depository institution for certain acts by the depository institution. *See* 12 U.S.C. § 1831j(b). Like section 612(d), § 1831j(b) provides a claimant with a cause of action that may

be filed "in the appropriate United States district court" without any reference to state court jurisdiction. *Id.* In *Raya v. Maryatt Indus.,* 829 F.Supp. 1169 (N.D.Cal.1993), however, a district court rejected a depository institution's reliance on § 1831j(b) as evidence of complete preemption of state-law tort and contract claims and remanded the case to state court. 829 F.Supp. at 1168. This language alone therefore does not provide sufficient evidence of congressional intent to invoke the complete preemption doctrine.

Comcast next points to a 1992 amendment to the Cable Act that authorizes the Federal Communications Commission ("FCC") to establish a pricing formula to determine maximum reasonable rates for the lease of commercial access channels. Cable Television Consumer Protection and Competition Act of 1992 § 9, Pub.L. No. 102-385, 106 Stat. 1640 (1992) (the "CTCPCA"), *codified at* 47 U.S.C. § 532(c)(1) & (4). The CTCPCA also empowers the FCC to establish reasonable terms and conditions for the lease of commercial access channels and to create administrative procedures for the "expedited resolution" of any disputes over the rates, terms, or conditions. *Id.* This argument fails to carry the day. The legislative history for these amendments speaks only of an intent to create federal standards for cable operators when they offer access to commercial leased access channels. As with the Cable Act, the CTCPCA's legislative history says nothing about treating claims related to leased access channels as though they arise under federal law or about any other jurisdictional issues. *See generally* S.Rep. No. 102-92 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1133-1230; H. Conf. Rep. No. 102-862 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1231-86. While Congress's interest in creating federal standards to be applied in such cases certainly is relevant to an assessment of whether the federal law supersedes state-law claims under an ordinary preemption analysis, the creation of such federal standards is not so unusual that it reveals an intent to replicate the jurisdictional force of the LMRA or ERISA.

Given these circumstances, we conclude that section 612 of the Cable Act and its legislative history fail to demonstrate the requisite congressional intent to convert Bay TV's state law claims into claims arising under federal law and to permit removal jurisdiction under § 1441(a). In reaching this conclusion, we have avoided adopting a specific test to be applied to all future claims of complete preemption in this circuit.

While such a test may indeed be appropriate in future cases in light of further direction from the Supreme Court, the circumstances of this case allow us to focus our attention solely upon Congress's intent as manifested in the statutory language and legislative history.[3]

To this end, we also have taken great care to avoid legal questions and arguments raised by the parties that are unnecessary to our resolution of the complete preemption issue. Most significantly, we express no opinion as to whether Bay TV's state law claims run afoul of ordinary preemption principles or whether the claims are the legal equivalent of the cause of action created by section 612(d). Because we have concluded that the district court lacked jurisdiction under the complete preemption doctrine, we necessarily must avoid further consideration of these issues, which go directly to the merits of Bay TV's claims. *See Schmeling,* 97 F.3d at 1343 ("We choose to avoid, if possible, the awkwardness of simultaneously (1) holding that we lack jurisdiction and (2) commenting on the merits of the preemption defense.").

We also decline to consider Comcast's argument that, even if section 612 does not convert Bay TV's state law claims into federal claims for removal purposes, the district court properly asserted jurisdiction under the "substantial federal question" doctrine recognized in *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). This argument, which implicates a jurisdictional doctrine that is distinct from complete preemption, is raised for the first time in the final two pages of Comcast's response brief. Comcast did not raise this argument in the proceedings before the district court, and the district court considered only whether jurisdiction existed under the complete preemption doctrine. Although we "may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court," *Colsa Corp. v. Martin Marietta Servs., Inc.,* 133

---

[3]For example, although we have relied largely upon the Tenth Circuit's scholarly examination of the complete preemption doctrine in *Schmeling,* that opinion suggests that the provision of a federal cause of action, by itself, manifests Congress's intent to permit removal. *See Schmeling,* 97 F.3d at 1343. In our view, the provision of a federal cause of action, while relevant, is not dispositive of the issue of congressional intent. If the creation of a federal cause of action served as the sole litmus test for congressional intent, complete preemption would apply to every federal statute that creates such a cause of action and complete preemption would be common rather than extraordinary. As this case demonstrates, Congress may create a federal cause of action without also providing sufficient evidence of its intent that state causes of action are to be considered as arising under the federal statute and thus removable to federal court.

F.3d 853, 855 n. 5 (11th Cir.1998) (per curiam), we find in this case that justice would not be served by exploring an argument that one party addressed only superficially and that its adversary did not address at all. We therefore decline to reach the merits of this issue. *See Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231, 1232 (11th Cir.1985) ("We, therefore, decline to reach the merits of an issue on which the district court has not ruled.") (per curiam) (citation and internal quotation omitted).

### III. Conclusion

For the foregoing reasons, we conclude that section 612 of the Cable Act does not confer removal jurisdiction over Bay TV's state-law claims pursuant to the complete preemption doctrine. We VACATE the district court's Order of May 22, 1997, granting Comcast's Motion to Strike and denying Bay TV's Motion to Remand, and REMAND to the district court for further proceedings consistent with this opinion.