CIRCLE REDMONT, INC., a Florida Corporation, Plaintiff,

v.

MERCER TRANSPORTATION COMPANY, INC., a Kentucky Corporation, and Mercer Transportation Company, Inc., an Indiana Corporation, Defendants/Third–Party Plaintiffs,

v.

Francisco Loza Quiroz, d/b/a Auto Express Quiroz, Third–Party Defendants.

No. 99–951–CIV–ORL–18A.

United States District Court, M.D. Florida, Orlando Division.

Dec. 26, 1999.

Patrick Francis Roche, Frese, Nash & Torpy, P.A., Melbourne, FL, for Circle Redmont, Inc., a Florida corporation, plaintiff.

William Earl Davis, Buchanan Ingersoll, P.C., Miami, FL, for Mercer Transportation Company, Inc. (Kentucky), a Kentucky corporation, Mercer Transportation Company, Inc. (Indiana), an Indiana corporation, defendants.

## ORDER

SHARP, District Judge.

The issue before the Court on the plaintiff's motion for remand (doc. 13) is whether the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706,

carries such extraordinary preemptive force that state law breach of contract and conversion claims involving a shipper's failure to collect payments due should be regarded as federal claims sufficient to invoke federal question jurisdiction on removal. Because the Carmack Amendment's language and legislative history do not manifest a congressional intent to convert state law claims into Carmack claims for purposes of removal jurisdiction, this Court is without jurisdiction and remand is appropriate.

## I. Background

On March 27, 1999, the plaintiff, Circle Redmont, Inc., contracted with the defendants, Mercer Transportation Company, Inc. of Kentucky and Mercer Transportation Company, Inc. of Indiana, "to ship [the plaintiff's] goods from Brevard County, Florida to D & F Masons in New York City, New York." (Compl.¶¶ 7, 16.) The defendants allegedly breached this contract and converted the plaintiff's property "by releasing [the plaintiff's] goods to D & F Masons without first collecting from D & F Masons its payment due and owed for the goods in the amount of $56,630.50." (*Id.* ¶ 8; *see also id.* ¶¶ 13, 17, 22.) To remedy this loss, the plaintiff brought the present action before Florida's Eighteenth Judicial Circuit naming only state law claims for breach of contract and conversion as the theories of recovery. (*See id.*) The defendants then removed the action to this Court.

## II. Discussion

■ The plaintiff presently moves to remand the case for lack of jurisdiction. In a removal action, the defendants bear the burden of establishing removal jurisdiction. *See, e.g., Fowler v. Safeco Ins. Co. of America,* 915 F.2d 616, 617 (11th Cir. 1990); *Horne v. Southern Bell Tel. & Tel. Co.,* 793 F.Supp. 315, 316 (S.D.Fla.1992); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Remand is favored where federal jurisdiction is not absolutely clear. *See Partin v. Cableview, Inc.,* 948 F.Supp. 1046, 1050 (S.D.Ala.1996) (citing *Burns v.*

*Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994)).

Under the removal statute, a district court has removal jurisdiction over a civil action brought in state court as long as the district court would have original jurisdiction over the action under either diversity or federal question jurisdiction. *See* 28 U.S.C.A. § 1441(a) (West 1994). Because the $56,630 amount in controversy is below the $75,000 minimum required for diversity jurisdiction under 28 U.S.C. § 1332, the defendants must establish federal question jurisdiction by showing that the plaintiff's action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (West 1993).

■ To do this, the defendants must overcome the well-pleaded complaint rule, which provides that federal question jurisdiction exists only if a federal claim is evidenced upon the face of the complaint. *See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). As the Supreme Court explained, "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Id.* Thus, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption ..." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

The plaintiff's complaint does not satisfy the well-pleaded complaint rule because the face of the complaint evidences only state law claims. Nevertheless, the defendants assert that this Court has jurisdiction under an exception to the well-pleaded complaint rule known as the complete preemption doctrine.

■ Under the complete preemption doctrine, claims are removable despite the well-pleaded complaint rule where "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordi-

nary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). The defendants contend that the Carmack Amendment carries such extraordinary preemptive force.

Although the Eleventh Circuit has not yet resolved the issue of whether the Carmack Amendment carries such extraordinary preemptive force, this Court is not without guidance. The Supreme Court first recognized the complete preemption doctrine in *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), where the Supreme Court found, with little discussion, that section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempted an employer's claim for breach of a "no-action" clause in a collective bargaining agreement.

The Supreme Court revisited the complete preemption doctrine in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In *Metropolitan Life,* the Supreme Court addressed whether section 502(a) of the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), preempted state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan such that "complaints filed in state courts purporting to plead such state common law causes of action are removable." 481 U.S. at 60, 107 S.Ct. 1542. According to the Supreme Court, the issue turned on whether Congress "manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* at 66, 107 S.Ct. 1542. Section 502(a) of ERISA manifested such an intent because ERISA's jurisdictional language mirrored that of section 301 of the LMRA and because ERISA's legislative history indicated that suits to enforce benefit rights under ERISA plans "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947." *Id.* at 65–66, 107 S.Ct. 1542 (quoting H.R. Conf. Rep. No. 93–1280, at 327 (1974)).

In *Blab T.V., Inc. v. Comcast Cable Communications,* 182 F.3d 851 (11th Cir. 1999), the Eleventh Circuit analyzed Supreme Court and circuit court decisions addressing the complete preemption doctrine in order to determine whether section 612 of the Cable Communications Policy Act of 1984, 47 U.S.C. § 532, carried such extraordinary preemptive force to transform state law claims into federal claims for purposes of removal jurisdiction. The Eleventh Circuit acknowledged that "although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." *Blab T.V., Inc.,* 182 F.3d at 856. Further, the Eleventh Circuit reiterated that Congress's intent is the primary focus of a complete preemption analysis. *See id.* at 857. Quoting an article written by Arthur Miller about the complete preemption doctrine, the Eleventh Circuit stated that the goal of a complete preemption analysis is "'to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one].'" *Id.* (quoting Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition,* 76 Tex. L.Rev. 1781, 1797–98 (June 1998)).

After reviewing the Supreme Court and circuit court precedents, the Eleventh Circuit evaluated Congress's intent with respect to the Cable Act by comparing the

Cable Act's language and legislative history with that of the LMRA. Although the Cable Act's jurisdictional language paralleled the LMRA's language, the Cable Act did not have extraordinary preemptive force because the Cable Act's legislative history omitted any indication that the jurisdictional language in section 612 of the Cable Act was intended to operate in the same manner as section 301 of the LMRA. *See id.* Moreover, several of the Cable Act's provisions contemplated "the application of state-law and the exercise of state-court jurisdiction to some degree with respect to the regulation of cable services." *Id.* at 857–858. Specifically, section 601(3) of the Cable Act stated that one of the Cable Act's purposes is to "establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems." 47 U.S.C.A. § 521(3) (West 1991). Additionally, section 636(b) of the Cable Act provided that "[n]othing in this subchapter shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter." 47 U.S.C.A. § 556(b) (West 1991).

■ Like section 612 of the Cable Act, the Carmack Amendment's language and legislative history do not manifest an intent to transform state law claims into federal claims on removal. Although the Carmack Amendment's jurisdictional language, which is found in 28 U.S.C. § 1337(a), is similar to the language in section 301 of the LMRA, nothing in the Carmack Amendment's language or legislative history indicates that the Carmack Amendment's jurisdictional language operates in the same manner as section 301 of the LMRA. Furthermore, the Carmack Amendment contemplates state court involvement in the resolution of Carmack Amendment cases thereby suggesting that Congress did not intend for the Carmack Amendment to transform state law claims into Carmack claims. *See* 49 U.S.C.A. § 14706(d)(3) (West 1996) ("A civil action under this section may be brought in a United States District Court or in a State court."). Because the complete preemption doctrine applies only in extraordinary circumstances and because the Carmack Amendment's language and history do not manifest an intent to make state law claims removable as Carmack claims, the complete preemption doctrine does not apply to give this Court jurisdiction.

The defendants argue that Congress's intent is manifested by the Carmack Amendment's broad preemptive power. It is certainly true that the Carmack Amendment preempts most state law claims. *See, e.g., United Van Lines Inc. v. Shooster,* 860 F.Supp. 826, 828 (S.D.Fla.1992) (concluding that the Carmack Amendment "preempts virtually any state law claim"); *Air Products and Chems., Inc. v. Illinois Cent. Gulf R.R.,* 721 F.2d 483, 486 (5th Cir.1983) (stating that the purpose of the Carmack Amendment "was to substitute a paramount and uniform national law as to the rights and liabilities of interstate carriers subject to the amendment"); *Underwriters at Lloyds of London v. North Am. Van Lines,* 890 F.2d 1112, 1115 (10th Cir. 1989) (quoting the Supreme Court in *New York, New Haven & Hartford Railroad Co. v. Nothnagle,* 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953), for the proposition that "[w]ith the enactment of the 1906 Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers liability for property loss"). Yet, the question at issue is not whether the Carmack Amendment preempts the state law claims in this case. Instead, the question is whether Congress manifested an intent that the Carmack Amendment transform state law claims into federal Carmack claims for purposes of removal jurisdiction, and, based on the Carmack Amendment's language and legislative history as a whole, the Court finds that Congress did not manifest such an intent.

Also to support the defendants' position, the defendants cite two cases, *Carraway v. Mayflower Transit Inc.,* 36 F.Supp.2d 262 (E.D.N.C.1998) and *Duerrmeyer v. Alamo Moving and Storage,* 49 F.Supp.2d

934 (W.D.Tx.1999), where district courts applied the complete preemption doctrine to find federal question jurisdiction on removal. Neither of these cases are persuasive because the *Carraway* and *Duerrmeyer* Courts did not address whether the Carmack Amendment's language and history manifest a congressional intent to make state law claims removable. The *Carraway* Court, in a single sentence, simply declared that case law such as *Metropolitan Life* establishes the defendant's removal right. *See Carraway,* 36 F.Supp.2d at 264. Furthermore, while the *Duerrmeyer* Court discussed Congress's intent to make the Carmack Amendment supersede state law, the *Duerrmeyer* Court never addressed in detail Congress's intent with respect to removal jurisdiction. *See Duerrmeyer,* 49 F.Supp.2d at 935. Because the *Carraway* and *Duerrmeyer* Courts did not explore Congress's intent with respect to removal jurisdiction, the cases are not persuasive authority in the Eleventh Circuit. Courts that have examined Congress's intent have found that the Carmack Amendment does not carry such extraordinary power as to transform state law claims into federal claims for purposes of removal jurisdiction. *See Ben & Jerry's Homemade, Inc. v. KLLM, Inc.,* 58 F.Supp.2d 315, 318–19 (D.Vt. May 28, 1999) (examining the Carmack Amendment's language for purposes of discovering Congress's intent and finding that the Carmack Amendment does not convert state law claims into federal claims on removal); *Schaper Co. v. C.A.R. Transp. Brokerage Co.,* 1997 WL 852488, at *5 (N.D.Miss.1997) (finding no manifest congressional intent to make Carmack Amendment claims removable); *see also Beers v. North Am. Van Lines, Inc.,* 836 F.2d 910, 913 (5th Cir.1988) (finding that the Carmack Amendment does not transform state law claims into federal claims for purposes of removal).

### III. Conclusion

Because the complete preemption doctrine is one of narrow application and because the Carmack Amendment's language and history do not manifest an intent to convert state law claims into federal claims on removal, the plaintiff's complaint does not present claims arising under federal law, and the Court lacks jurisdiction. Accordingly, the plaintiff's motion for remand (doc. 13) is **GRANTED**. The Court directs the Clerk of Court to take the necessary steps to effect the remand.