Willie James SAPP, et al. Plaintiffs,

v.

AT & T CORP., et al., Defendants.

No. CIV.A. 02–A–53E.

United States District Court,
M.D. Alabama,
Eastern Division.

Aug. 15, 2002.

Jock M. Smith, Cochran, Cherry, Givens & Smith, Tuskegee, AL, for Plaintiffs.

Robin Garrett Laurie, Justin Matthew Parnell, Balch & Bingham, Montgomery, AL, Edward S. Allen, Balch & Bingham, Birmingham, AL, Wanda Devereaux, Devereaux & Associates, LLC, Montgomery, AL, Michael D. Murphy, Michael L. Glaser, Lottner Rubin Fishman Brown & Saul PC, Denver, CO, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on Plaintiffs' Motion to Remand (Doc. # 14), filed on February 13, 2002. The Complaint in this case was filed on November 15, 2001 in the Circuit Court of Macon County, Alabama, alleging state law claims of misrepresentation, fraudulent suppression, conspiracy to defraud, fraudulent deceit, and breach of contract. Defendant AT & T filed a timely Notice of Removal (Doc. # 1) on January 14, 2002, which was joined by Defendants Mercury Long Distance, Inc., Canopco, Inc., Business Discount Plan, Inc., and T. David Jenkins.

For reasons to be discussed, the Plaintiffs' Motion to Remand is due to be GRANTED.

### II. REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095

(1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

## III. BACKGROUND

This suit centers around an allegation of "slamming," a term commonly used to describe the unauthorized switching of a customer's long-distance telephone service carrier by a long-distance service provider or by a contractor, reseller, or other representative of such provider. The Plaintiffs in this case opted out of a class action filed in the United States District Court for the Central District of California.

Plaintiffs Willie James Sapp, Jr. and Cathy Hoffman are residents of Macon County, Alabama. They were subscribers of AT & T's long distance telephone services between June 12, 1996 and July 23, 1999. The Plaintiffs allege that the Defendants used deceptive and fraudulent telemarketing, advertising, and promotional practices to conceal the unauthorized switching of their chosen long distance billing plans. As a result, Plaintiffs allege, they incurred substantial charges above and beyond those which would have been incurred using Plaintiff's chosen and contracted long distance providers.

## IV. DISCUSSION

Defendants have attempted to remove this case on the grounds that federal question jurisdiction is present pursuant to 28 U.S.C. § 1331 by virtue of the "complete preemption" doctrine and the "filed tariff" doctrine, and that diversity jurisdiction is present pursuant to 28 U.S.C. § 1332.

Plaintiffs argue that the complete preemption and filed tariff doctrines are inapplicable to the claims at issue in this case. Also, Plaintiffs concede complete diversity among the parties, but contest that the amount in controversy requirement is met, as they have disavowed damages in excess of $75,000. Accordingly, Plaintiffs contend, this case should be remanded to state court.

### A. Federal Question Jurisdiction

■ The removal statute, 28 U.S.C. § 1441(a), provides that any civil action brought in state court may be removed to federal court by the defendant as long as the federal court has jurisdiction in the case. Removal based on federal question jurisdiction is generally governed by the "well-pleaded complaint" rule, which provides that a case may be removed only if the plaintiff's properly pleaded complaint reveals that the claim is based on federal law. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Under the well-pleaded complaint rule, a case in which the plaintiff asserts only state law claims may not be removed to federal court based on the existence of a federal defense-even the defense of ordinary preemption. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) "Congress has long since decided that federal defenses do not provide a basis for removal." *Id.* at 399, 107 S.Ct. 2425.

An exception to the well-pleaded complaint rule is the complete preemption doctrine. *See BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir.1999). Under this doctrine, a defendant may remove a case to federal court even though the plaintiff raises only state law claims in her complaint, when "the preemptive force of a [federal] statute is so extraordinary that it

converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."[1] *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (internal quotation marks omitted).

Noting that the Supreme Court has applied the doctrine of complete preemption only in very narrow circumstances, the Eleventh Circuit has held that complete preemption applies only in the presence of a "clear manifestation of congressional intent to permit removal." *Anderson*, at 1043. In determining whether Congress intends for a federal statute to completely preempt state-law claims, courts have considered a variety of factors: (1) whether the state claim is displaced by federal law under an ordinary preemption analysis, (2) whether the federal statute provides a cause of action, (3) what kind of jurisdictional language exists in the federal statute, and (4) what kind of language is present in the legislative history to evince Congress' intentions. *Id.* Although the Eleventh Circuit recently declined to adopt a specific test for complete preemption, it noted that such an inquiry should be aimed at determining "whether Congress ... *intended to grant a defendant the ability to remove* the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]." *Id.* at 1042 (quoting *BLAB T.V.*, 182 F.3d at 858)(emphasis in original)(internal quotation marks omitted).

Defendants contend that the Federal Communications Act, 47 U.S.C. § 151 *et seq.* ("FCA"), completely preempts state law claims based on an allegation of "slamming," and therefore, Plaintiffs' attempt to cabin their theories of recovery within the confines of state law is an instance of "artful pleading."[2] The linchpin of this argument is the "filed tariff" or "filed rate" doctrine, which applies to all common carriers and has been characterized as follows:

> Under the [Communications Act], the rate of the carrier duly filed [with the FCC] is the only lawful charge. Deviation from it is not permitted upon any pretext. [Customers of a common carrier] are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the [FCC] to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) (quoting *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915)). Accordingly,

---

1. The Eleventh Circuit has recognized that the doctrine of complete preemption is often confused with the defense of ordinary federal preemption. *See Anderson v. H & R Block, Inc.*, 287 F.3d 1038, 1041 n. 6 (11th Cir.2002) (citing *BLAB T.V.*, 182 F.3d at 854). Ordinary preemption is a defense that may be raised in state court as well as in federal court. *Id.* As a defense, ordinary preemption does not appear in the plaintiff's well-pleaded complaint, and thus does not give the defendant the ability to remove a case to federal court. *Id.* Unlike the defense of ordinary preemption, the doctrine of complete preemption gives a defendant the ability to remove the case to federal court. *Id.*

2. "Artful pleading" has been defined as "[a] plaintiff's disguised phrasing of a federal claim as solely a state law claim in order to prevent a defendant from removing the case from state court to federal court." Black's Law Dictionary 1174 (7th ed.1999).

the filed tariff embodies, at least in large part, the contractual relationship between a common carrier and its customers. *See id.; Cahnmann v. Sprint Corp.,* 133 F.3d 484, 488 (7th Cir.1998).

The Defendants point to language in *Cahnmann* that suggests any state-law breach of contract claim brought by a customer against a common carrier is displaced by federal law. In *Cahnmann,* the court opined:

> [The filed] tariff (either in its original form or as amended) is the contract. Any rights that the plaintiff has to complain about a breach of contract are rights granted to her by the original tariff and protected against the amendment by the principle of reasonableness that the FCC uses to determine the validity of a tariff . . . when it is challenged. A tariff filed with a federal agency is the equivalent of a federal regulation, . . . and so a suit to enforce it, and even more clearly a suit to invalidate it as unreasonable under federal law (both types of suit being comprehended in the plaintiff's contract count), arise under federal law. (citations omitted).

> .  .  .  .  .

> And since the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce. Federal law does not merely create a right; it occupies the whole field, displacing state law. (citations omitted).

133 F.3d at 488–89. At first blush, this passage appears to support the proposition that the Communications Act completely preempts all state law claims for breach of contract arising from the customer/common carrier relationship. The central issue in *Cahnmann,* however, was "whether the federal Act extinguishes the right to bring a suit for breach of contract under state law *when the effect of the suit would be to challenge a tariff." Id.* at 488 (emphasis added). Accordingly, the assertions that "there is no contractual undertaking left over that state law might enforce" and that "Federal law . . . occupies the whole field," inasmuch as they refer to the entire relationship between a customer and a common carrier, are properly understood as *dicta.*

Where a plaintiff alleges breach of contract based on the conduct of a common carrier that is unrelated to the rates charged or the services rendered by that carrier, which is the situation in this case,[3] a state's common law of contracts may be applicable. This proposition is supported by several considerations, not least among them those expressed in Chief Justice Rehnquist's concurrence in *Central Office:*

> The filed rate doctrine furthers the [antidiscriminatory policy of the Communications Act] by disallowing suits brought to enforce agreements to provide services on terms different from those listed in the tariff. This ensures that the tariff governs the terms by which the common carrier provides those services to its customers.

> It is crucial to note, however, that this is all the tariff governs. In order for the filed-rate doctrine to serve its purpose, therefore, it need pre-empt only those

---

**3.** The exact nature of the contract allegedly breached by the Defendants, or who, for that matter, is a party to the contract, is unclear from the Complaint. Since the claim is based on an allegation of "slamming," however, it is reasonable to infer that Plaintiffs are not claiming they were charged too much in vio- lation of a filed tariff, but rather, they were overcharged because their service was switched, which would presumably entail charges under a *different* tariff. In any event, the court expresses no opinion as to the viability of the Plaintiffs' contract claim.

suits that seek to alter the terms and conditions provided for in the tariff. This is how the doctrine has been applied in the past.

.    .    .    .    .

The tariff does not govern ... the entirety of the relationship between the common carrier and its customers. For example, it does not affect whatever duties state law might impose on [a common carrier] to refrain from intentionally interfering with a customer's relationship with its [own] customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations. The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff. It does not serve as a shield against all actions based in state law.

524 U.S. at 229–230.

Furthermore, § 414 of the FCA provides that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.[4] While the *Cahnmann* court held that this savings provision does not trump the filed tariff doctrine where a plaintiff seeks to challenge the validity or reasonableness of a filed tariff, the language clearly recognizes Congress' desire to avoid the preemption of state law remedies in the broader context of customer/common carrier relations. *See Cahnmann,* 133 F.3d at 488. The *Cahnmann* court reasoned that allowing a plaintiff to challenge a tariff on state law grounds "would impair the Act's policy of confining telecommunications common carriers to tariffed services and vesting the FCC with primary jurisdiction to determine the validity of tariffs." *Id.* at 488. The same cannot be said of suits seeking to enforce putative contractual rights or other state-law rights that do not implicate the policy underlying the filed tariff doctrine. *See, e.g., Fax Telecommunicaciones Inc. v. AT & T,* 138 F.3d 479 (2nd Cir.1998); *Quayle v. MCI Worldcom, Inc.,* 2001 WL 1329594 (N.D.Cal. Oct. 11, 2001); *Aronson v. Sprint Spectrum, L.P.,* 90 F.Supp.2d 662 (W.D.Pa.2000); *Bauchelle v. AT & T,* 989 F.Supp. 636 (D.N.J.1997); *State of Vermont v. Oncor Communications, Inc.,* 166 F.R.D. 313 (D.Vt.1996).

The Defendants do not specifically argue that the filed tariff governs the authority of a common carrier to switch one of its customers. In any event, this argument would be undermined by the fact that § 258[5] of the FCA prohibits slamming,

---

4. Section 206 of the FCA provides that carriers shall be liable for any damages flowing from violations of the Act. Under § 207, an aggrieved party "may either make [such] a complaint to the [FCC], ... or may bring suit for the recovery of damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction ...." Defendants advance the position that vesting the courts of the United States with exclusive jurisdiction over lawsuits under the Act evinces a Congressional intent that all cases involving communications common carriers and their customers be in federal court. Interpreting § 207 in this manner, however, would render § 414 meaningless except in cases where state law causes of action were brought in addition to a claim under the FCA pursuant to 28 U.S.C. § 1367.

5. Notably, § 258(b) provides, in pertinent part: "[t]he remedies provided by this subsection are in addition to any other remedies available by law." Although § 258(b) only provides a remedy for *carriers* that may lose a customer because of slamming, the language quoted is evidence of a Congressional intent to provide an *additional* remedy where common carriers violate the FCA in this manner,

strong evidence that Congress does not consider the filed tariff doctrine to govern such practices. Accordingly, the allegedly offending conduct does not involve the breach of any obligations the Defendants may have had under the tariff(s) governing the pricing and services aspects of their relationship with the Plaintiffs. Moreover, Plaintiffs have not "artfully pled" their claims-it is clear on the face of the FCA that the statute is not the exclusive remedy for unlawful practices such as the unauthorized switching of a customer's long distance service.[6] Accordingly, the court concludes that Plaintiff's claims are not completely preempted, and therefore the court does not have federal question jurisdiction over this case.

### B. Diversity Jurisdiction

■ Defendants also contend that diversity jurisdiction exists in this case. Plaintiffs concede that the parties are completely diverse. They argue, however, that the amount in controversy requirement is not met because they have expressly claimed damages of only $75,000 in the Complaint. Defendants counter that the amount of damages claimed in a complaint is not controlling under Alabama law, and furthermore, jury verdicts from the Circuit Court of Macon County routinely exceed $75,000.

Where a plaintiff expressly limits the damages sought in a complaint to an amount less than the jurisdictional minimum, it is incumbent on the defendant seeking to invoke the jurisdiction of the federal court to prove to a legal certainty that, assuming the plaintiff establishes liability, the recovery must exceed $75,000.

See *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). This burden is a heavy one, as federal courts are courts of limited jurisdiction, and a presumption of truth attaches to the representations made by officers of the court. *See id.*

Defendants argue that the legal certainty test is met here because a survey of all reported decisions from the appellate courts of Alabama since *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), that both originated in Macon County and included claims for punitive damages, resulted in the courts' affirmance of punitive damages judgments in excess $75,000. This merely shows, however, that punitive awards in excess of $75,000 have been affirmed on appeal, not that all punitive awards at trial in similar cases have exceeded $75,000, especially in cases where such amounts were not sought in the complaints. Defendants confuse the preponderance (more than likely) standard in cases where the complaint claims unspecified and unlimited damages, e.g., *Davis v. Franklin Life Ins. Co.*, 71 F.Supp.2d 1197 (M.D.Ala.1999), with the legal certainty standard which applies here. In this case the Plaintiff's attorney, an officer of the court, has expressly limited the claims to a total amount of $75,000, Defendants have not shown to a legal certainty that any recovery by the Plaintiffs *must* exceed that amount in spite of the limitation, and *Burns* dictates that the jurisdictional amount requirement for removal has not been met.

---

rather than to displace remedies already available.

**6.** Furthermore, Defendants have not cited the court to any legislative history indicating that the FCA was intended to completely preempt state law in the area of customer/common

carrier relationships. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1312 (11th Cir.2001) ("a review of the [FCA] ... reveals that Congress [ ] did not intend to preempt completely state causes of action or remedies concerning the subject matter of the Act").

## V. CONCLUSION

Consistent with the foregoing, the court finds that it lacks subject matter jurisdiction over this case, and therefore, Plaintiffs' Motion to Remand is due to be GRANTED. Plaintiffs have also requested an equitable award of attorney's fees as, they contend, this case was improvidently removed; however, the court does not deem the Defendants' attempt at removal to be so lacking in merit as to justify such an award.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

1. Plaintiffs' Motion to Remand is GRANTED.

2. Plaintiffs' request for an award of attorney's fees is DENIED.

3. This case is REMANDED to the Circuit Court of Macon County, Alabama. The clerk is DIRECTED to take appropriate steps to effect the remand.