**Mark D. LAMM, an individual, and Beate Lamm, an individual, Plaintiffs,**

v.

**BEKINS VAN LINES CO., et al., Defendants.**

**Civil Action No. 00–T–224–S.**

United States District Court, M.D. Alabama, Southern Division.

April 17, 2001.

Edward S. Brown, Reese, Reese & Brown, Daleville, AL, for plaintiffs.

Richard Warren Whittaker, Enterprise, Richard L. Seelman, Philip S. Brooks, Jr., Francis A. Courtenay, Jr., Courtenay, Forestall, Hunter & Fontana, New Orleans, LA, Donald B. Sweeney, Jr., Rives & Peterson, David P. Condon, Bradley, Arant, Rose & White, LLP, Birmingham, AL, for defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

The question presented is whether this federal court has removal jurisdiction based on, among other things, "complete preemption" under the Carmack Amendment, 49 U.S.C.A. § 14706.[1] For the rea-

sons that follow, the court concludes that it does not.

### I.

Plaintiffs Mark D. and Beate Lamm brought this lawsuit to recover for damage done to their household goods while the goods were being shipped from Alabama to Hawaii pursuant to an arrangement with private companies secured by the United States military, of which Mrs. Lamm is an active servicemember; they also seek to recover for emotional injuries they say they suffered while their belongings were being packed for shipment. The plaintiffs have named the following interstate transport companies as defendants: Bekins Van Lines Co., Inc.; Swanner Transfer and Storage, Inc.; H.C. & D. Forwarders, Inc.; and Worldwide Moving and Storage, Inc.

The plaintiffs initially brought this suit in state court in January 2000, asserting only state-law causes of action. But, on February 25, 2000, the defendants removed the case to federal court on the ground that the court has federal-question jurisdiction under 28 U.S.C.A. §§ 1331, 1337 & 1441, because the plaintiffs' state-law claims are completely preempted by the Carmack Amendment. The parties then proceeded to prepare for trial.

However later, while considering a motion for summary judgment filed by some of the defendants, the court realized that it might actually be without removal jurisdiction, and the parties were asked to brief the issue. In addition, in the wake of the court's announcement of its concern about the presence of removal jurisdiction, the plaintiffs filed a motion seeking to maintain jurisdiction in this court by adding allegations to support diversity-of-citizen-

---

1. The Carmack Amendment was recently recodified in the ICC Termination Act of 1995, Pub.L. No. 104–88, 1995 U.S.C.C.A.N. (109 Stat.) 803. Until then, courts often referred to it as the Carmack Amendment to the Interstate Commerce Act.

ship jurisdiction and by adding a Carmack Amendment claim to support federal-question jurisdiction.

This opinion now addresses the removal-jurisdictional issue.

## II.

■ The first question is whether the court has properly raised the jurisdictional issue on its own. It is beyond doubt that it has. As recently as this year, the Eleventh Circuit Court of Appeals reaffirmed that a court "must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001); *see also* 28 U.S.C.A. § 1446(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); Charles Alan Wright, *Law of Federal Courts* 250 (5th ed.1994) ("[s]ince parties cannot confer jurisdiction on the federal court by consent, the court may act on its own motion"). The court therefore now properly turns to the jurisdiction question.

## III.

### A.

■ "[S]ubject matter jurisdiction exists only where granted by statute." *GTE Corp.*, 236 F.3d at 1299. With exceptions not relevant here, 28 U.S.C.A. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Congress has granted original federal-question jurisdiction to United States district courts for any action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. Congress has also defined federal-question jurisdiction to encompass: "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $ 10,000, exclusive of interest and costs." 28 U.S.C.A. § 1337.

■ Whether a complaint meets the "arises under" test of § 1331 or § 1337—or, put another way, presents a "federal question"—must be determined from the face of the plaintiff's complaint. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). This requirement, which is known as the "well-pleaded complaint" rule, applies to a defendant's right to removal, with the determinative factor being whether the plaintiff's complaint, and not the removal petition, presents a federal question. *See id.* at 10 n. 9, 103 S.Ct. at 2847 n. 9. Moreover, the plaintiff "is master to decide what law she will rely upon," *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and thus has the prerogative to rely on state law alone although both state and federal law may give her a cause of action. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (the plaintiff "may avoid federal jurisdiction by exclusive reliance on state law"). Therefore, the fact that a plaintiff has elected to pursue her claims under state law alone does not justify removal even if the plaintiff also has an unpursued claim under federal law.

■ Further, "[t]he presence of a federal defense does not make the case removable, even if the defense is preemption, and even if the validity of the preemption defense is the only issue to be resolved in the case." *BLAB T.V. of Mobile Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir.1999) (internal citations omitted); *see also Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) ("As a defense, [federal preemption] does not appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court").

■ Despite the well-pleaded complaint rule, the defendants argue that removal jurisdiction exists for the present case because the Carmack Amendment is subject to complete preemption, a doctrine constituting a narrow exception or "independent corollary" to the well-pleaded complaint rule. *See BLAB T.V.*, 182 F.3d at 854. The complete-preemption doctrine, first recognized by the Supreme Court in *Avco Corp. v. Aero Lodge*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), states "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546 (1987). In certain rare instances, the preemptive power of a statute is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. at 1547; *see also* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L.Rev. 1781

(1998); 14B Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice & Procedure* § 3722.1 (3d ed.1998).

Complete preemption is importantly distinct from the ordinary preemption of state law by federal law although, as the Eleventh Circuit has observed, the two categories of preemption have often been conflated: "[U]se of the term 'preemption' in this context has caused a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption. For that reason, it is worth pointing out that: complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court." *GTE Corp.*, 236 F.3d at 1313 (internal citations and quotations omitted); *see also Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir.1989) (use of the "complete preemption" label is unfortunate because the doctrine is one of federal jurisdiction not preemption).[2]

Complete preemption resembles "ordinary preemption" in that its applicability is a matter of positive law: "the touchstone of the federal district court's removal jurisdiction is ... the intent of Congress." *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1548. However, complete preemption is unlike ordinary preemption in that the ultimate intent inquiry for the former is not the choice-of-law question of whether a particular federal law is designed to trump state law but rather the forum-selection question of whether Con-

---

**2.** Given this frequent misidentification of ordinary preemption and complete preemption, some courts and commentators have suggested replacing the latter term with the label "super-preemption" or "jurisdictional preemption". *See, e.g.*, 15 James Wm. Moore, et al., *Moore's Federal Practice*, § 103.45[1] (3d ed.1999) ("jurisdictional preemption" is the better term). This court will, however, continue to use "complete preemption" in the jurisdictional sense in order to be consistent with the most common Eleventh Circuit and Supreme Court usage.

gress intended to establish federal-question removal jurisdiction for claims that appear from the plaintiff's complaint to be rooted only in state law and thus otherwise subject to the well-pleaded complaint rule. *See BLAB T.V.,* 182 F.3d at 857; *See also Metropolitan Life,* 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring). The specific nature of this intent inquiry for complete preemption has been explained by the Eleventh Circuit as follows: "[A]ll [the appellate court tests for complete preemption] focus on a similar goal: to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]." *BLAB T.V.,* 182 F.3d at 857 (internal citations omitted).

█ Consistent with this intent-based determination, when there is an "absence of explicit direction from Congress," the Supreme Court is "reluctant to find the extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life,* 481 U.S. at 64, 65, 107 S.Ct. at 1547; *see also* 14B Charles Alan Wright, et al., *Federal Practice & Procedure* § 3722.1 (3d ed. 1998) ("Because of the obvious federalism implications of the complete-preemption doctrine, its application has been extremely limited by the courts"). The Supreme Court has found state-law claims to be completely preempted in only two contexts, § 301 of the Labor Management Relations Act of 1948 (LMRA), 29 U.S.C.A. § 185, *see Avco Corp. v. Aero Lodge,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1132, *see Metropolitan Life Ins. Co. v. Taylor,*

481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Moreover, the Court has emphasized its reluctance to extend the doctrine to contexts other than the LMRA and ERISA. *See Metropolitan Life,* 481 U.S. at 65, 107 S.Ct. at 1547; *BLAB T.V.,* 182 F.3d at 856; *see also Whitt v. Sherman Int'l Corp.,* 147 F.3d 1325, 1333 (11th Cir. 1998) (commenting that the Supreme Court has turned the tide on lower courts' expansion of the complete-preemption doctrine).

Justice Brennan, concurring in *Metropolitan Life,* an ERISA case, advised that "In future cases involving other statutes [that is, statutes other than the LMRA and ERISA], the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." 481 U.S. at 68, 107 S.Ct. at 1548 (emphasis in original). Lower courts, however, have not settled on this kind of bright-line, clear-statement rule, at least not one that would demand a clear-statement in the statutory text itself. Instead, after *Metropolitan Life,* many statutes still have no statutory language specifically conferring (or denying) removal jurisdiction on the basis of complete preemption, and "[c]ourts ... have struggled to define the exact contours of the complete preemption doctrine." *BLAB T.V.,* 182 F.3d at 856; *but cf. Marcus v. AT&T Corp.,* 138 F.3d 46, 55 (2d Cir.1998) ("After *Metropolitan Life,* there is no complete preemption without a clear statement to that effect from Congress.")

In *Avco Corp.,* the Supreme Court's first formulation of the complete-preemption doctrine, the Court held that § 301 of the LMRA completely preempts state-law claims for violations of contracts between an employer and a labor organization, thus providing federal "arising under" jurisdiction for purposes of § 1337. But the *Avco Corp.* Court provided "little elaboration" of

its reasons for so deciding. *BLAB T.V.*, 182 F.3d at 855. However later, the Court did expressly set forth its complete-preemption analysis in *Metropolitan Life*, a case in which the Court found it to be the "clearly manifested intent of Congress" to legislate complete preemption of state-law claims relating to benefits under an ERISA-regulated employee-benefit plan. 481 U.S. at 67, 107 S.Ct. at 1548. The factors expressly accorded weight in *Metropolitan Life* have since been understood to comprise the Supreme Court's extant, "albeit imprecise[ ]," analytical approach to complete preemption. *BLAB T.V.*, 182 F.3d at 856 (the Supreme Court complete-preemption caselaw after *Metropolitan Life* has left *Metropolitan Life* as the "undisturbed" complete-preemption precedent).

In *Metropolitan Life*, the Supreme Court based its finding of congressional intent to establish removal jurisdiction on evidence from both the statutory text and legislative history: First, "the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA", that is, the provision relied upon in *Avco Corp.*—a parallel that is significant because of the "presumption that similar language in two labor law statutes has a similar meaning." [3] *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547. Second, the Court found this presumption about congressional intent to be confirmed by the fact that the legislative history of ERISA's civil-enforcement provisions contains express statements that Congress intended to legislate complete preemption, including a

conference-report pronouncement that: "All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947. H.R. Conf.Rep. No. 93–1280, p. 327 (1974)" *Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. at 1547.

The *Metropolitan Life* Court also spoke to the relation between findings of complete preemption and of ordinary preemption. The Court observed in passing that ordinary preemption applied to the case before it because, "as a suit by a beneficiary to recovery benefits from a covered plan, [the plaintiff's case] falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action," and because the plaintiff's common-law causes of action had not been preserved by an ERISA savings clause. *Id.* at 481 U.S. at 62–63, 107 S.Ct. at 1546. But, in its complete-preemption analysis, the Court made it clear that a finding of complete preemption should not hinge on whether there is ordinary preemption under settled law: "[T]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress. Indeed, even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Id.* at 66, 107 S.Ct. at 1548.

In *BLAB T.V.*, the Eleventh Circuit suggested that a narrow reading of *Metropolitan Life* would limit judicial findings of complete preemption to contexts that replicate the two aspects of the ERISA pro-

---

3. "Section 502(f) [of ERISA] says: 'The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.' 29 U.S.C. § 1132(f). *Cf.* § 301(a) of the LMRA, 29 U.S.C. § 185(a)." *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547. The LMRA's jurisdictional subsection says that suits "may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

vision relied upon by the Supreme Court, that is, where "a federal cause of action features jurisdictional language that closely parallels that of section 301 of the LMRA as well as an express statement within the legislative history that Congress intends for all related claims to arise under federal law in the same manner as section 301." *BLAB T.V.*, 182 F.3d at 856. Applying this two-factor inquiry to the case before it, the *BLAB T.V.* court determined that the first *Metropolitan Life* factor is present in § 612 of the Cable Communications Policy Act of 1984, 47 U.S.C.A. §§ 521, et seq., because "section 612(a) contains jurisdictional language that is similar to section 301 of the LMRA," while the second *Metropolitan Life* aspect is not present because "Congress omitted any indication in the Cable Act's legislative history that section 612(a)'s jurisdictional language is intended to function in the same manner as section 301 of the LMRA." *Id.* at 857. The *BLAB T.V.* court described the absence of the second factor as a "persuasive argument against finding complete preemption in this case" and yet the court declined to adopt a "narrow reading" of the *Metropolitan Life* inquiry which would rigidly employ it as a "dispositive" test for all cases. *Id.*

More generally, the Eleventh Circuit chose, in the absence of "further direction from the Supreme Court," to "avoid[ ] adopting a specific test to be applied to all future claims of complete preemption in this circuit." *Id.* at 858–59. The *BLAB T.V.* court nonetheless expanded upon the *Metropolitan Life* analysis in a way that provides some additional guidance for other complete-preemption inquiries. After applying the two-factor *Metropolitan Life* analysis, the court searched for further "clues of Congress's intent" from two other sources of evidence: first, the statutory provisions surrounding § 612 of the Cable Act and, second, the legislative history of those surrounding provisions. *See* 182 F.3d

at 857. The court found that, as "Compared to the LMRA and ERISA, the Cable Act reveals a broad policy of preserving state authority except in areas in which the exercise of this authority would be inconsistent with federal law." *Id.* This broad policy of federalism was inferred from the fact that the Cable Act includes: (1) provisions that contemplate the application of state law as well as federal law; (2) provisions that allow for the exercise of concurrent state-court jurisdiction; (3) a savings clause entitled "Coordination of Federal, State, and Local Authority," providing that " '[n]othing in this subchapter shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter' "; and (4) language stating that a purpose of the Act is to " 'establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems.' " *Id.* at 857–858 (citations omitted.)

In its analysis, the *BLAB T.V.* court also described some federal-law aspects of the Cable Act that should *not* be taken as a basis for finding complete preemption: that the particular provision at issue, § 612 of the Cable Act, created a federal cause of action intended to displace state-law causes of action related to commercially-leased "access channels"; that a House Report stated a "desire to encourage the development of 'Federal case law precedent' in this area"; and that the statutory language of § 612 refers to filings in only " 'United States district court' without any reference to state-court jurisdiction." *See id.* at 858. These aspects are not telling for complete-preemption purposes because such circumstances "are common features found in many sections of the United States Code." *Id.* The fact that a 1992 amendment to the Cable Act authorizes the Federal Communications Commission to create federal standards that would be

applicable in lawsuits, such as a pricing formula for maximum reasonable rates, is only "relevant" for an *ordinary*-preemption analysis because it is "not so unusual" as to reveal any intent about *complete*-preemption. *Id.* at 858; *see also Bear MGC Cutlery Co., Inc., v. Estes Express Lines, Inc.,* 132 F.Supp. 937, 941 (N.D.Ala. 2001) (helpfully outlining "The lessons about complete preemption that can be gleaned from *BLAB T.V.*").

In *GTE Corp.,* the Eleventh Circuit again faced a complete-preemption argument outside of the LMRA and ERISA contexts, where it reiterated the teaching of *Metropolitan Life* and *BLAB T.V.* that Congress' specific intent regarding jurisdiction is the touchstone of the complete-preemption doctrine. The court determined that Congress "did not intend to preempt completely state causes of action or remedies concerning the subject matter of the [Federal Communications Act, 47 U.S.C. § 151, et seq.]." The court arrived at this conclusion because those orders of the Federal Communications Commission expressly preempting some state regulation specified that " 'we preempt the states here only to the extent that their ... regulation is at odds with the regulatory scheme set forth' " and because, despite the fact the relevant jurisdictional provision in the Federal Communications Act mentioned only United States district courts, the Act contained a savings clause providing that " '[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' 47 U.S.C. § 414." *GTE Corp.,* 236 F.3d at 1313. The court placed particular emphasis on the presence of a savings clause: "As we stated in *BLAB,* the existence of this type of 'savings' clause which 'contemplate[s] the application of state-law and the exercise of state-court jurisdiction to some degree ... counsels against a conclusion

that the purpose behind the ... Act was to replicate the "unique preemptive force" of the LMRA and ERISA.' " *Id.* (quoting *BLAB T.V.,* 182 F.3d at 857–58).

■ In sum, there is no determinate test for discerning congressional intent regarding complete preemption in the absence of a clear statement in the statutory text. However, the following factors have been identified as relevant evidence by the Supreme Court or the Eleventh Circuit: the presence of jurisdictional language closely paralleling that of § 301 of the LMRA; a statement in the legislative history expressly supporting complete preemption or, to the same effect, a statement invoking "arising under" jurisdiction as exists for the LMRA under *Avco;* and, for the Eleventh Circuit, the nature of the federalist scheme of the broader statutory context and legislative history, including especially whether the language expressly contemplates a role for both state and federal authorities, concurrent state and federal-court jurisdiction, and whether there is a savings clause or other language that assumes a continuing role for some state law.

### B.

■ The defendants ground their claim that this court has removal jurisdiction on the argument that the Carmack Amendment falls within the purview of the complete-preemption doctrine. However, nothing in the amendment's language, legislative history, or surrounding legislative context manifests a specific congressional intent not only to "provide a federal defense to a state cause of action that could be asserted in either a state or federal court, but also ... to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action in to

a federal [one]." *BLAB T.V.*, 182 F.3d at 857 (citations omitted).

Since the Supreme Court issued its opinion in *Metropolitan Life* clarifying that complete preemption is a function of manifest congressional intent rather than a judicially-crafted doctrine, the Carmack Amendment has been re-codified in the ICC Termination Act of 1995, Pub.L. No. 104–88, 1995 U.S.C.C.A.N. (109 Stat.) 803. This re-codification means that Congress has had the opportunity to respond to the Supreme Court's complete-preemption opinions, and yet the text of the amendment and of related provisions still contains no express grant of removal jurisdiction for claims brought in the form of state-law actions. The Carmack Amendment patently fails the clear-statement rule put forward in Justice Brennan's concurrence in *Metropolitan Life,* and any argument for complete preemption by the amendment has to fall back on more indirect indications of congressional intent.

The Eleventh Circuit has not considered the issue of whether the complete-preemption doctrine applies to the Carmack Amendment, but this court believes that, under the Eleventh Circuit complete-preemption caselaw, especially *BLAB T.V.,* the amendment does not warrant complete-preemption treatment. First and most significantly, the Carmack Amendment does not in any way satisfy the two-factored "narrow reading" of *Metropolitan Life* that asks whether a statute has jurisdictional language echoing that of § 301 of the LMRA and whether the legislative history includes any express statement that Congress intends to establish complete preemption or "arising-under" jurisdiction such as was found in *Avco* for § 301 ·of the LMRA. 49 U.S.C.A. § 14706(d)(3), entitled "Jurisdiction of courts" provides that "A civil action under this section may be brought in a United States district court or in a State court," and subsections (1)-(4) of

§ 14706 also describe actions in both state and federal court, setting forth venue provisions for both state and federal systems. 28 U.S.C. § 1337(a) states that original federal-question jurisdiction over Carmack Amendment claims is limited to actions for which the matter in controversy for each bill of lading is greater than $ 10,000. These jurisdictional provisions for the amendment, which expressly contemplate state as well as federal-court jurisdiction, and which restrict federal jurisdiction by an amount-in-controversy requirement, do not just fail to echo § 301 of the LMRA, they seem almost diametrically opposed to the jurisdictional language of the latter which mentions only federal-court jurisdiction and expressly abjures any amount-in-controversy limitation. *See* § 301 of the Labor Management Relations Act of 1948, 29 U.S.C.A. § 185 ("[suits] may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties"); *see also Bear MGC Cutlery,* 132 F.Supp.2d at 942 (finding the jurisdictional language of Carmack and § 301 of the LMRA dissimilar). Nor is there anything in the legislative history of the Carmack Amendment to indicate that the amendment's jurisdictional language is intended to establish complete preemption or to operate in the same manner as § 301 of the LMRA. *See Circle Redmont, Inc. v. Mercer Transp. Co.,* 78 F.Supp.2d 1316 (M.D.Fla.1999); *City of Laredo v. Texas Mexican Railway Co.,* 935 F.Supp. 895, 898 (S.D.Tex.1996); *see also Howe v. Allied Van Lines,* 622 F.2d 1147 (3d Cir. 1980) (providing a fascinating and detailed account of the Carmack Amendment's early history and purposes).

Second, following the analysis of *BLAB T.V.,* the Carmack Amendment's broader statutory and legislative-history context indicates a federalist policy that contem-

plates a role for state as well as federal authority. Concurrent state-court jurisdiction was one of the factors that counseled against a finding of complete preemption in *BLAB T.V.*, and as mentioned above, concurrent jurisdiction is recognized in the amendment's jurisdictional provisions. In fact, the amendment implicates an even greater role for state courts than that provided by a simple grant of concurrent jurisdiction because Congress has given the state courts *exclusive* jurisdiction over some Carmack Amendment claims for, while § 14706 authorizes general state-court jurisdiction over Carmack Amendment claims, the amount-in-controversy requirement of 28 U.S.C.A. § 1337 withholds federal-court jurisdiction over some Carmack claims. Further evidence of Congress's intent to establish a system of joint and complementary state-federal authority is contained in the list of pur-

poses in 49 U.S.C.A. § 13101, entitled "Transportation policy", including a statement in § 13101(3)(A) of an intent "to cooperate with the States on transportation matters for the purpose of encouraging the States to exercise intrastate regulatory jurisdiction in accordance with the objectives of this part."

All of this textual evidence convinces this court that Congress did not intend to establish complete preemption of state-law claims by the Carmack Amendment, and that the defendants' argument to the contrary is clearly wrong under *BLAB T.V.*

This conclusion is fortified by that fact that, while district courts remain in significant disagreement on the issue,[4] the only two courts of appeals to rule on it have held that the Carmack Amendment does not completely preempt state-law claims. *See Hunter v. United Van Lines*, 746 F.2d

---

4. District courts agreeing there is no complete preemption for the Carmack Amendment include *Circle Redmont, Inc. v. Mercer Transp. Co., Inc.*, 78 F.Supp.2d 1316 (M.D.Fla.1999); *Ben & Jerry's Homemade, Inc. v. KLLM, Inc.*, 58 F.Supp.2d 315 (D. Vermont 1999); *Simmer v. North American Van Lines, Inc.*, 1998 WL 1754006 (M.D.Ala. 1998); *Counter v. United Van Lines, Inc.*, 935 F.Supp. 505 (D. Vermont 1996); *The Schaper Company v. C.A.R. Transp. Brokerage Co., Inc.*, 1997 WL 852488 (N.D.Miss.1997); and *City of Laredo v. Texas Mexican Railway Co.*, 935 F.Supp. 895 (S.D.Texas 1996). District courts holding that the Carmack Amendment falls within the complete-preemption doctrine include *Bear MGC Cutlery Co., v. Estes Express Lines, Inc.*, 132 F.Supp.2d 937 (N.D.Ala. 2001) and *Carraway v. Mayflower Transit, Inc.*, 36 F.Supp.2d 262 (E.D.N.C.1998). *Reeves v. Mayflower Transit, Inc.*, 87 F.Supp.2d 1251 (M.D.Ala.1999), also treats the Carmack Amendment as subject to complete preemption but *Reeves* does not distinguish complete preemption from ordinary preemption, and apparently reaches its holding about removal jurisdiction on the authority of caselaw that, as has been noted by *Bear MGC Cutlery*, actually only squarely considers ordinary preemption. *See Bear MGC Cutlery*,

132 F.Supp.2d at 940 (observing that some courts use the term "complete preemption" not as a jurisdictional term-of-art but as a way to denote the position that the Carmack Amendment governs all, not just some, state-law causes of action, and that this ambiguity has caused significant confusion.); *see also The Schaper Co.*, 1997 WL 852488, at *5 (describing the conflation of complete and ordinary preemption in the Carmack Amendment context by "sister courts"). *Fields v. Bennett Truck Transport., Inc.*, 1999 WL 1425403 (S.D.Ala. June 4, 1999), is a case in which the court apparently assumed, without discussion, that it had removal jurisdiction on the basis of Carmack Amendment preemption, and held that (ordinary) preemption by the Carmack Amendment is expansive in scope.

To be sure, because the *Simmer* opinion was issued by the undersigned district judge, it should be dispositive of the issue for the undersigned. However, *Simmer* was issued before the Eleventh Circuit's *BLAB T.V.* opinion, which laid out a more expansive list of the kinds of evidence that might be relevant in determining the complete-preemption issue than was considered by this court in *Simmer*. This court has with this order, therefore, essentially reconsidered *Simmer* in light of *BLAB T.V.*

635 (9th Cir.1984); *Beers v. North American Van Lines, Inc.,* 836 F.2d 910 (5th Cir.1988).[5]

*Bear MGC Cutlery,* one of the district court opinions holding that the Carmack Amendment is subject to the complete-preemption doctrine, actually seems to share much of this court's finding that the *Metropolitan Life* and *BLAB T.V.* factors supporting complete preemption are absent in the Carmack Amendment context. *See* 132 F.Supp.2d at 939–944. The *Bear MGC Cutlery* court apparently reaches its conclusion that the Carmack Amendment warrants complete preemption, despite finding these factors to be mostly absent, because it places dispositive weight on the fact that, in its view, the amendment unambiguously leaves no place for state law, and because it would be "illogical" and inefficient for state courts to handle Carmack Amendment claims. *See id.* at 946.

This court disagrees with *Bear MGC Cutlery* for two reasons. First, to begin, this court disagrees with *Bear MGC Cutlery*'s apparent assumption that the denial of a role for a state law in a federal statutory scheme is weighty evidence in favor of complete preemption. It is true that, in *BLAB T.V.* and *GTE Corp.,* the Eleventh Circuit mentioned congressional allowance for state law as a factor weighing *against* a finding of complete preemption. But it does not follow that a federal statute's exclusion of state law is a weighty factor *for* a finding of complete preemption. This latter proposition would give decisive weight to the existence of ordinary preemption in determining the complete-preemption issue, that is, it would fly in the face of the clear insistence of the

Supreme Court and the Eleventh Circuit that complete preemption should not be inferred from the fact of ordinary preemption, and that complete preemption is much rarer than ordinary preemption. *See Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1548; *BLAB T.V.,* 182 F.3d at 855.

Second, this court disagrees with the *Bear MGC Cutlery* court's assumption that it is well-settled that the ordinary-preemptive scope of the Carmack Amendment is plenary, leaving no state-law claims unpreempted. The re-codified Carmack Amendment is accompanied by a "savings clause" in 49 U.S.C.A. § 13103, entitled "Remedies as cumulative": "Except as otherwise provided in this part, the remedies provided under this part are in addition to remedies existing under another law or common law." While courts have yet to make much of this clause in deciding whether some state-law claims survive the amendment's preemptive effect, it would be counter to the rules of statutory construction to render this clause a complete nullity. The presence of just this kind of "savings clause" was listed as a factor weighing against complete preemption in *BLAB T.V.,* 182 F.3d at 857, and especially *GTE Corp.,* 236 F.3d at 1313.

*Bear MGC Cutlery* correctly notes that a classic early Supreme Court case on the Carmack Amendment, *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), gives little weight to the "savings clause" that was extant at the time. *See* 132 F.Supp.2d at 946 n. 6. However, *Adams Express* did not consider the status of state-law claims not in direct conflict with the Carmack Amendment, and the "savings clause" at that time was

---

**5.** As explained in *Bear MGC Cutlery,* while some district courts have understood two court of appeals cases, the unpublished *Bormaster v. Express Shipping Ctr., Inc.,* 185 F.3d 865, 1999 WL 391044, *4, *6 (9th Cir.1999), and *Moffit v. Bekins Van Lines Co.,* 6 F.3d 305 (5th Cir.1993), to be rulings finding that com-

plete preemption applies to the Carmack Amendment (thus silently overruling *Hunter* and *Beers* ), *Bormaster* and *Moffit* actually engage only the substantive-law issue of the scope of ordinary preemption by the Carmack Amendment rather than the jurisdictional issue of complete preemption.

narrower than that of the most recent recodification.[6]

Finally, there is a wide range of opinion among the appellate and trial courts about the scope of the Carmack Amendment's ordinary preemption of state common-law claims. *See, e.g., Gordon v. United Van Lines, Inc.,* 130 F.3d 282 (7th Cir.1997) (the Carmack Amendment preempts state-law claims for damages to goods but does not preempt state-law claims for "separate harms", including emotional distress claims); *Hubbard v. All States Relocation Services, Inc.,* 114 F.Supp.2d 1374 (S.D.Ga. 2000) (accord); *see also Rini v. United Van Lines, Inc.,* 104 F.3d 502 (1st Cir. 1997) (the Carmack Amendment preempts any claims that enlarge the responsibility of the carrier for loss or that affect the ground or measure of recovery, including liability stemming from the claims process but, liability for harms separate from the loss of goods is not preempted, including liability for emotional-distress claims); *Hubbard v. Allied Van Lines, Inc.,* 540 F.2d 1224 (4th Cir.1976) (observing that the Carmack Amendment has a savings clause, the language of which Congress broadened in its most recent re-codification, and holding that this savings clause means that punitive and emotional-distress damages are not preempted); *North American Van Lines Inc. v. Pinkerton Security Systems, Inc.,* 89 F.3d 452 (7th Cir.1996) (suggesting that the Carmack Amendment may not preempt "incidental harms", including a deceptive trade-practices claim, and a claim for breach of an extracontractual duty that is distinct from a claim for actual damage to goods); *Cleveland v. Beltman North American Co., Inc.,* 30 F.3d 373 (2d Cir.1994) (the Carmack Amendment preempts claims for punitive damages, including any claim for

such under federal common law); *Moffit v. Bekins Van Lines Co.,* 6 F.3d 305 (5th Cir.1993) (the Carmack Amendment has a broad preemptive sweep, requiring the dismissal of the plaintiffs' state-law claims, including their emotional distress claim); *Taylor v. Mayflower Transit, Inc.,* 22 F.Supp.2d 509 (W.D.N.C.1998) (accord); Jeanne Kaiser, *Moving Violations: An Examination of the Broad Preemptive Effect of the Carmack Amendment,* 20 W. New Eng. L.Rev.289 (1998) (describing the divergent rulings of courts). Thus, the question of the breadth of the Carmack Amendment's ordinary preemption of state law is an unsettled one, providing further reason not to accord the Carmack Amendment's purported exclusion of state law any significant weight in the complete-preemption determination.

Here, it is instructive to consider another argument available to the plaintiffs: that their Alabama-law outrage claim in particular would not be preempted by the Carmack Amendment under the rulings of some courts. These courts, including the Seventh, Fourth and First Circuit Courts of Appeals in *Gordon, Hubbard,* and *Rini,* have held that state-law claims for losses other than actual damages incurred in the shipment process are not preempted by the Carmack Amendment, and that intentional-infliction-of-emotional-distress claims fall within this non-preempted domain. In the instant case, the plaintiffs' argument that their outrage claim is distinct from a preempted claim for actual damages to their goods is even stronger than those accepted under this caselaw because the plaintiffs have alleged not just emotional distress resulting from actual damage and loss of their household goods but also emotional distress stemming from their alleged experience of impotently wit-

6. Anyway, it may be anachronistic to rely on this case that was issued long before the Supreme Court articulated the doctrine of complete preemption and long before the most recent re-codification of the Carmack Amendment.

nessing the drunken, brawling behavior that put their heirlooms at risk. That is, the plaintiffs allege traumatic injuries that could have been incurred independently of whether or not there was any actual damage to the goods. Thus, under the law of some circuits, the plaintiffs would seem to have at least one state-law claim not governed or superceded by the Carmack Amendment.

In giving this example of a possible role for state law in the plaintiffs' case, this court wants to make very clear that it is not deciding whether or not state-law outrage claims such as the plaintiffs' fall within the Carmack Amendment's ordinary-preemptive scope. The question of the scope of the Carmack Amendment's ordinary preemption is most appropriately left to the state court on remand.[7] *See GTE Corp.*, 236 F.3d at 1313; *BLAB T.V.*, 182 F.3d at 859; *Romney v. Lin*, 105 F.3d 806 (2d Cir.1997); *see also Caterpillar*, 482 U.S. 386 at 398 n. 13, 107 S.Ct. 2425 at 2433 n. 13. For purposes of this court's complete-preemption analysis, however, it is useful to note that, should the state court on remand decide that the plaintiffs' outrage claim is not preempted, the court would then need to turn to purely state-law issues, such as whether the plaintiffs' claim rises to the level of severity necessary to make out an Alabama outrage claim. In this example then, the *Bear MGC Cutlery* court's belief that it would

be "illogical" for a state court to handle a case implicating Carmack Amendment issues is gainsayed by the fact that the plaintiffs' suit might well involve novel state-law issues over which a state court could have a claim to greater competence than a federal court.

Moreover, precedent suggests it is inappropriate for a court to decide that even purely federal-law issues require a federal forum in the absence of reason to think that Congress lacks trust in state-court adjudication of such federal issues. *See Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1548; *BLAB T.V.*, 182 F.3d at 857, *Hunter v. United Van Lines*, 746 F.2d 635 (9th Cir.1984) (ruling that Congress has chosen not to legislate complete preemption by the Carmack Amendment and commenting that, although the court's own policy judgment about the need to provide an exclusively federal forum for purely federal claims would likely differ from that of Congress, only Congress's policy judgment on this matters.) Again, complete preemption is a function of manifest congressional intent to specifically provide for removal jurisdiction that would otherwise be in violation of the *Mottley* rule. Because the Carmack Amendment does not, under *BLAB T.V.*, even bear the indicia of implied congressional intent to establish complete preemption, this court holds that the complete-preemption doctrine does not apply to the Carmack Amendment, and

---

7. The state court can decide which, if any, of the plaintiffs' state-law claims needs to be dismissed as a result of the defendants' Carmack Amendment defense. And, providing yet another reason not to assume the Carmack Amendment comprehensively governs the law of any case implicating Carmack Amendment issues, there is even law available under which the state court could decide that the Carmack Amendment's liability limitations and protections for shippers are inapplicable on account of other federal law not raised by the parties. *See, e.g., Howe v. Allied Van Lines*, 622 F.2d 1147 (3d Cir.1980) (find-

ing that a federal provision regarding government bills of lading renders the Carmack Amendment inapplicable when members of the Armed Forces arrange shipments of their household goods through a government agency); *United Services Automobile Assoc. v. Paul Arpin Van Lines, Inc.*, 652 F.2d 198 (1st Cir. 1981); *The Munitions Carriers Conference, Inc. v. United States*, 147 F.3d 1027 (D.C.Cir. 1998); *see also Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014 (Fed.Cir.1995); *but see Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103 (1st Cir.1978); *Marohn v. Burnham Van Services, Inc.*, 478 F.Supp. 49 (N.D.Ill.1979).

that the defendants' invocation of the Carmack Amendment as a defense in their answer cannot provide a basis for jurisdiction in this court.

## IV.

 In the wake of the court's announcement of its concern about the presence of removal jurisdiction, the plaintiffs filed a motion seeking to amend their complaint to assert removal jurisdiction based on diversity of citizenship, 28 U.S.C.A. § 1332.

The plaintiffs' proposed amendment states that "plaintiffs aver the Court has jurisdiction of this action based upon diversity of citizenship and amount in controversy, 28 U.S.C. § 1332." This generalized assertion of diversity jurisdiction is the plaintiffs' sole statement in support of diversity jurisdiction. The only specific facts alleged by the plaintiffs relating to the question of diversity jurisdiction are contained in the plaintiffs' original complaint, in which diversity jurisdiction is not alleged and in which it is averred that defendant Swanner Transport and Storage, Inc. "is believed to be an Alabama corporation and believed to have its principal place of business in Montgomery, Alabama," that defendants Bekins Van Lines Co., H.C. & D. Forwarders, and Worldwide Moving and Storage, Inc. are believed to be corporations doing business in Alabama, and that the plaintiffs are "residents of the State of Hawaii."

The plaintiffs' efforts fall short for several reasons. First and most notably, the defendants have at no time alleged the existence of diversity-based jurisdiction, and, yet, the defendants are the only parties who might have had the power to remove this case. *See F.D.I.C. v. S & I 85–1, Ltd.*, 22 F.3d 1070, 1073 (11th Cir. 1994) ("The general removal statute[, 28 U.S.C.A. § 1441(a),] expressly limits the power of removal to defendants."). There-

fore, even if the plaintiffs' motion for leave to amend their complaint were due to be granted, the plaintiffs' proposed statement alleging diversity jurisdiction would be insufficient to provide a basis for this court's removal jurisdiction.

 Second, even if a plaintiff were permitted to invoke diversity jurisdiction on behalf of a removing defendant, and even if the plaintiffs' motion for leave to amend their complaint were due to be granted, the plaintiffs' proposed factual allegations of diversity jurisdiction would be insufficient. To invoke removal jurisdiction on the basis of diversity, a notice of removal must distinctly and affirmatively allege each party's citizenship. *See McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir.1975) (per curiam). The allegations must show that the citizenship of each plaintiff is different from that of each defendant. *See* 2 James Wm. Moore, et al., *Moore's Federal Practice* § 8.03[5][b] (3d ed.1998). The plaintiffs' proposed amendment, as well as their original complaint, fails to comply with this rule requiring specificity in allegations of diversity jurisdiction.

 The plaintiffs have not clarified whether their proposed amendment reflects new information not yet provided to the court about the nature of the parties' citizenship at the time of removal, or, if in retrospect, they now think their original complaint alleged a sufficient factual basis for diversity jurisdiction. Either way, they have failed to satisfy the specificity requirement because their proposed amendment provides no facts, while the specific facts that are alleged in the original complaint are insufficiently specific. The complaint describes only the "residence," and not the "citizenship," of the plaintiffs, and it fails to list the State of incorporation and principal place of business of some of the corporate defendants. Yet an allegation that a party is a "resi-

dent" of a State is not sufficient to establish that a party is a "citizen" of that State, *see Delome v. Union Barge Line Co.*, 444 F.2d 225, 233 (5th Cir.1971),[8] and the document supporting removal where a party is a corporation must allege both the State of incorporation *and* where the corporation has its principal place of business, *see* 28 U.S.C.A. § 1332(c)(2); *American Motorists Ins. Co. v. American Employers' Ins. Co.* 600 F.2d 15, 16 & n. 1 (5th Cir.1979).[9]

Third and finally, although 28 U.S.C.A. § 1441 provides for removal based upon diversity of citizenship, subsection (b) precludes removal where the defendant seeking removal is a citizen of the state wherein the action is brought. *See* 16 James Wm. Moore, et al., *Moore's Federal Practice,* § 107.04 (3d ed.1999); 14B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure,* § 3723 (1998). Here, at least one of the defendants is a citizen of Alabama. Therefore, even if the plaintiffs could seek removal on behalf of the defendants, § 1441(a) would preclude them from doing so here.

### V.

In addition to their new allegation of diversity jurisdiction, the plaintiffs seek to use their proposed amendment to add a federal claim under the Carmack Amendment and thereby provide another basis for staying in federal court, namely federal-question jurisdiction. However, even if this court were to allow the amendment, the addition of a federal claim would not save this case from remand for two rea-

sons. First, as stated above, only the defendant may seek removal. Second, the removal statutes are conventionally interpreted to require that a determination about federal-question jurisdiction be judged according to the content of the complaint *at the time of removal. See Whitt v. Sherman Int'l. Corp.,* 147 F.3d 1325 (11th Cir.1998) ("the right to remove is generally tested at the time of the filing for removal"); *Lengyel v. Sheboygan County,* 882 F.Supp. 137, 138 (E.D.Wis. 1995) (if a "case was improperly removed to federal court in the first instance, plaintiff may not keep it in this improper forum by amending his complaint [to add a federal claim]").

An appropriate order remanding this case to state court will be entered in accordance with this opinion.

---

**8.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**9.** Moreover, this court notes that some courts have held that even defendants who were

diverse at the time of removal and who properly allege diversity after the time of removal have waived their right to claim diversity jurisdiction if they neglected to assert diversity jurisdiction by the time of removal. *See, e.g., Lupo v. Human Affairs Intl., Inc.,* 28 F.3d 269 (2d Cir.1994); *The Schaper Company v. C.A.R. Transp. Brokerage Co., Inc.,* 1997 WL 852488, *2, n. 2 (N.D.Miss.1997).